[Civil No. 2766.   Filed January 28, 1929.]

[274 Pac. 163.]

PRESCOTT COURIER, INC., a Corporation, Appellant, v. R. E. MOORE, L. J. HASELFELD and G. O. VYNE, as Members of the Board of Supervisors of Yavapai County, A. J. DOUD, DAN SEAMAN and JOURNAL-MINER PUBLISHING COMPANY, a Corporation, Appellees.

See Constitutional Law, 12 **C. J.**, sec. 222, p. 795, n. 33, sec. 827, p. 1111, n. 1, p. 1112, n. 4, sec. 855, p. 1128, n. 17, p. 1130, n. 30. Counties, 15 **C. J.**, sec. 243, p. 550, n. 8, sec. 353, p. 641, n. 60. Statutes, 36 **Cyc.**, p. 994, n. 98.

Mr. John A. Ellis and Mr. Clarence N. Boord, for Appellant.

Mr. W. E. Patterson, County Attorney and Mr. F. E. Flynn, Deputy County Attorney, for Appellees.

LOCKWOOD, C. J.—On February 26th, 1928, the board of supervisors of Yavapai county caused to be inserted in the Prescott Journal-Miner, then the official newspaper of said county, the following advertisement:

"Proposals Wanted. Sealed bids will be received at this office up to two o'clock P. M., Monday, February 20, 1928, by the board of supervisors for the following purposes, to wit:

"For the County Printing. Bidders must state the gross sum for which they will do the printing required by the county for one year. The county printing will include the following:

"A—For the publishing of the minutes of the board of supervisors of Yavapai county and the publishing of all advertisements required by law in the conduct of county business. The successful bidder will be required to furnish the office of the board of supervisors with the copy of every issue of the paper in which the minutes and notices are published, and in addition extra copies, not to exceed twenty, when same are required. The minutes of the board must be published in a newspaper of general circulation in the county within six days after being furnished by the clerk of the board. All notices and advertisements must be published as many times as requested.

"B—For the printing and furnishing of all ballots, poll lists, tally lists, blanks, election laws, cards, and any other supplies, that may be needed or ordered by the clerk of the board for the primary and general elections.

"C—For the printing and binding in booklet form seventy of the annual reports of the clerk of the board of supervisors of the county. This report must be printed in accordance with plans and specifications prepared by the clerk of the board of supervisors.

"D—For the printing and supplying of stock for all receipt books, assessment sheets and all forms and blanks required by the various offices of the county in the conduct of county business, the quantity required, a sample of the quality of paper and specifications as to form, may be seen in the supervisors'

office. The quantity of supplies shown on quantity sheets are approximate only, based upon estimate requirement for period specified and are subject to a variation of ten per cent. (10%) more or less.

"All specifications for the above requirements may be seen at the board of supervisors' office, Prescott, Arizona.

"Contracts for all of the above proposals to run for one (1) year from February 20, 1928. Payments will be made monthly by warrants drawn upon the expense fund.

"The successful bidder will be required to give bonds in such sums or amounts as the board of supervisors may require or as may be required by law for the faithful performance of contract, the same to be approved by the chairman of the board of supervisors of Yavapai county, Arizona.

"The board reserves the right to reject any or all bids. Bids to be indorsed 'Proposals for ———,' and have a copy of this advertisement attached thereto and addressed to the board of supervisors of Yavapai county, Arizona. Each bid must be accompanied by a certified or cashier's check for the sum of $250.00, payable to the order of the board of supervisors of Yavapai county, Arizona, as a forfeiture conditioned on the faithful execution of bond and contract required of the successful bidder; also an affidavit with his or its bid showing that his or its newspaper in which the publication is proposed to be made has been established and published within the state of Arizona for at least one year prior to the filing of such affidavit.

"Bidders are invited to be present at the opening of bids. For any further information apply to the clerk of the board. By order of the board of supervisors of Yavapai county, Arizona.

"HELEN McEACHRAN, Clerk."

This notice was published on February 7th, 8th, 9th, 10th, 11th, 12th, and 14th. No other notice was given of the proposals, except as above set forth. In response to this advertisement, bids were submitted by the following publishers of newspapers:

The Journal-Miner Publishing Company, a corporation, which publishes the Journal-Miner; Prescott Courier, Incorporated, a corporation, hereinafter called appellant, which publishes the Prescott Courier; A. J. Doud, who publishes the "Verde Copper News," and Dan Seaman, who publishes the "Monday Morning Star." All of such newspapers are published in Yavapai county, and qualified under paragraph 4657, Revised Statutes of Arizona of 1913, Civil Code, to publish legal notices which are paid for from public funds. These bids were opened on February 20th, 1928, and on February 24th the board of supervisors awarded the contract to A. J. Doud for the sum of $4,174, his bid being the lowest submitted, but without segregation as to the amounts bid for each particular class of work advertised for. Appellant's bid was for the lump sum of $5,280, but it was segregated for each class of business, setting up the amount per inch to be charged for advertising of the different classes, and that all the other work would be done for the difference between the sum of the advertising, figured at the rate per inch set forth in its bid, and the total sum of $5,280. The contract made by the supervisors with Doud set forth the sum which he had bid, which was to be paid in twelve equal monthly installments, but also provided that the said sum would not exceed the statutory rates for the work, and that, in case it should, the excess would be returned to the county.

Shortly thereafter appellant brought suit to enjoin the carrying out of the contract with Doud, and asking that the board be compelled to award the work to appellant in accordance with its bid. The case was heard before the court sitting without a jury, and on May 26th a judgment was entered in favor of the supervisors, which in effect established the validity of the bid and contract complained of. From this judgment an appeal has been taken.

The sole assignment of error is that the judgment is contrary to the law as applied to the facts above set forth, and in support of this contention appellant relies upon some eight legal propositions. The first is that the appellant as a taxpayer is entitled to maintain this action. We need not consider this further than to state that in our opinion, whenever public officers are about to proceed with the illegal expenditure of public money, or the making of a contract which will result in such expenditure, any taxpayer of the county, in the absence of some statute to the contrary, is entitled to maintain an action to prevent such illegal expenditure, without waiting until the money is actually spent, and then proceeding under some special law to recover the same. An ounce of prevention, proverbially, is worth a pound of cure, and we think it would be foolish to hold that the taxpayers must stand helplessly by, watching the completion of the illegal act, before they can make any attempt to avoid its effects. *Mines* v. *Del Valle,* 201 Cal. 273, 157 Pac. 530; *Crowe* v. *Boyle,* 184 Cal. 117, 193 Pac. 111.

The second proposition of law which we shall consider is that the notice and advertisement for bids did not provide for or permit competition between persons entitled to bid for said contract. In passing on this matter we consider the statutes governing contracts of this nature. Paragraphs 2422 to 2424, Revised Statutes of Arizona of 1913, Civil Code, deal with the letting of contracts for advertising, publication, and printing of every kind required or authorized to be done by the supervisors. They read as follows:

"2422. The board of supervisors shall let all advertising and publications and printing of every kind required or authorized to be made by them by contract, annually, subject to the limitations by law provided.

"2423. Written notices of the letting of such contract shall be deposited in the postoffice by the clerk of the board of supervisors, postage prepaid, addressed to the office of each newspaper eligible to the contract within the county, at least ten days prior to the opening of bids, calling for written bids for the advertising and publications and printing to be made during the ensuing year by the county, in type and form as provided by law, and stating on what day the bids received will be opened.

"2424. The contract shall be made with the lowest responsible bidder; and to him shall be given thereafter during the existence of the contract all advertising and publications and printing ordered made by the board of supervisors upon the terms and conditions of the contract. The paper of such advertising may be referred to as the official paper of the county; provided, that no bid shall be considered by the board of supervisors in excess of the statutory rates for such work."

It is the contention of appellant that, under the advertisement for bids above set forth, no one but the publisher of a newspaper qualified as provided in paragraph 4657, *supra,* could legally bid, while part of the work, at least, is of a character which could be done as well by others as by such publishers, and that, if the statute is construed to allow such limitation of bidding, it is unconstitutional, as being in contravention of section 13, article 2, and subdivision 13 of section 19, article 4, of the Constitution of Arizona, which read as follows:

"No law shall be enacted granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations." Article 2, § 13.

"No local or special laws shall be enacted in any of the following cases, that is to say:

. . . . . . . . . .

"13. Granting to any corporation, association, or individual, any special or exclusive privileges, immunities, or franchises." Article 4, § 19, subd. 13.

The work to be done, according to the advertisement, is divided into four classes. A is for publishing the minutes of the board of supervisors and all advertisements required by law in the conduct of county business. As a matter of statute, all advertisements of this nature can be published only in some kind of periodical, and bidding thereon is limited by law to newspapers of a certain class. There is a reasonable ground for this particular limitation. B is for the printing and furnishing of various election supplies; C, for the printing and binding of certain annual reports of the clerk of the board of supervisors; and D, for the printing and supplying of receipt books, forms and blanks. These last three classes of work can be done by any job-printing establishment as well as by a newspaper. The advertisement, however, calling as it does for a lump bid, in effect limits the bidders on any of the work to newspapers within the county of Yavapai, which have been published for one year, thus granting to such periodicals a privilege (that of bidding on public printing) which is not extended on the same terms to other citizens.

The purpose of the constitutional provisions cited is to secure equality of opportunity and right to all persons similarly situated. 12 C. J. 1112. The legislature may classify, but the classification must be predicated on some reasonable basis, which will promote a legitimate purpose of legislation. 12 C. J. 1128. Was the limitation in the advertisement authorized by the statute, and, if so, was such discrimination legitimate?

We have considered the same general question in the case of *State* v. *Childs*, 32 Ariz. 222, 54 A. L. R. 736, 257 Pac. 366. Under paragraph 4805, Revised Statutes of Arizona of 1913, Civil Code, no person except a registered pharmacist was permitted to sell

any kind of drugs, medicines or poisons, and after a careful examination of all the authorities we held the statute unconstitutional, for the reason that, so far as many classes of so-called "patent medicines" were concerned, there is no reason why the ordinary person with ability to read the English language could not sell them with as much safety to the public as could a registered pharmacist, and that the statute in effect granted to registered pharmacists a privilege not granted on the same terms to other equally well qualified citizens. We are of the opinion the same principle applies in the present case. In it we must either hold that the purpose of the statute is to insure free competition in public bidding, in which case the advertisement discriminating as it does against a certain class of bidders with no reasonable ground therefor, is illegal, or else that the statute is so planned as to stifle competition, with no ground for the discriminatory classification, excepting the granting of a monopoly to a favored class, in which case the law itself is unconstitutional.

As between the two horns of this dilemma, there is no question as to the one we must choose. It is the duty of this tribunal to uphold the constitutionality of a statute, if in any reasonable manner it can be done, and we have no hesitation in deciding that the statute contemplates the letting of public printing in such manner that all persons equally qualified to do each class of work shall be given an opportunity to bid for it, and that the advertisement above set forth, denying as it does the right of job-printing establishments to bid on work which they are amply qualified to take care of, and limiting such bids in effect to newspapers, does not comply with the statute.

Such being the case, it is unnecessary for us to consider the other alleged irregularities and illegalities. Since the entire proceeding was illegal, appel-

lant, of course, was no more entitled to bid than anyone else, and the contract cannot be awarded to it.

The judgment of the superior court of Yavapai county is reversed, and the case remanded, with instructions to enjoin permanently the board of supervisors from carrying out with A. J. Doud or the Verde Copper News the terms of the contract set forth in the complaint.

McALISTER and ROSS, JJ., concur.